FILED
UNITED STATES DISTRICT COURT
ALBUQUERQUE, NEW MEXICO

NOV 21 2002

Robert M. March
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                                                                                               02-1412 JP

ARMINOUS MATTHEWS,

    Defendant.

## MEMORANDUM OPINION AND ORDER

A hearing on Defendant Arminous Matthews' Motion to Suppress (Doc. No. 25) was held on Thursday, November 14, 2002, at 9:30 a.m. in the Gila Courtroom on the 5th floor of the Courthouse. The thrust of Defendant's Motion is that Officer Jonathan Salazar provoked Defendant to abandon his backpack, and thus, Defendant's abandonment of the backpack was involuntary.

Factual Background[1]

On July 15, 2002, Officer Salazar was conducting drug interdiction surveillance at the Greyhound Bus Station in Albuquerque. Inside the bus station, Officer Salazar observed Defendant holding a backpack over his shoulder. Approximately 20 minutes later Officer Salazar saw Defendant with the backpack at the snack bar inside the bus station, eating chips and

---

[1] To the extent that the testimony at the suppression hearing conflicted, the Court credits the testimony of Officer Salazar.



drinking juice at a table. The backpack was resting on top of the table where Defendant sat. Afterwards, Officer Salazar noticed Defendant sitting inside the bus station with the backpack on the chair next to him.

Officer Salazar approached Defendant and sat down so that the backpack was in the chair in between the two men. Officer Salazar presented his badge, told Defendant that he was investigating narcotics trafficking, and asked if he could speak with Defendant. Defendant agreed. Officer Salazar then asked Defendant for some identification and his ticket. Defendant produced both, however, his I.D. bore the name Arminous Matthews while the bus ticket was in the name of James Stewart. When Officer Salazar asked Defendant about his travel plans he received inconsistent answers. Eventually Officer Salazar turned his attention to the backpack laying in the chair.

Officer Salazar pointed at the backpack and asked if it belonged to Defendant. Defendant replied "No. That's not my backpack." Officer Salazar asked Defendant if he knew who owned the backpack and Defendant answered no. Officer Salazar asked Defendant if he packed the backpack and Defendant answered no. Officer Salazar asked Defendant if he had any interest in the backpack and Defendant answered no. Finally Officer Salazar asked Defendant if he cared what happened to the backpack and Defendant said that he did not. Officer Salazar then told Defendant that the men should turn the backpack into lost and found and Defendant responded by saying "I guess."

Officer Salazar then thanked Defendant for his time and took the backpack. Officer Salazar asked two people sitting near Defendant if the backpack belonged to them and they denied ownership. Officer Salazar walked about 20 feet from where Defendant was sitting and

opened the backpack. Inside the backpack was a heat sealed bundle of an off-white powdery substance. Through his training and experience Officer Salazar believed the bundle to be cocaine. Officer Salazar found chips and a drink in the backpack that he had earlier observed Defendant eating and drinking while in the snack bar. When Officer Salazar looked up he saw Defendant heading rapidly toward the exit. Officer Salazar then ordered other police officers inside the bus station to arrest Defendant.

Legal Standard

> In *Abel v. United States*, 362 U.S. 217, 241, 80 S.Ct. 683, 698, 4 L.Ed.2d 668 (1960), the Supreme Court declared that the Government's warrantless seizure of abandoned property did not violate the Fourth Amendment. *Id.* at 241, 80 S.Ct. at 698. Since Abel, the circuit courts have examined the issue, and the following guidelines to the "abandoned property" exception to the Fourth Amendment's warrant requirement have emerged. When individuals voluntarily abandon property, they forfeit any expectation of privacy in it that they might have had. *United States v. Berd*, 634 F.2d 979, 987 (5th Cir.1981). Therefore, a warrantless search or seizure of abandoned property is not unreasonable under the Fourth Amendment. *E.g., United States v. Diggs*, 649 F.2d 731, 735 (9th Cir.), *cert. denied*, 454 U.S. 970, 102 S.Ct. 516, 70 L.Ed.2d 387 (1981); *Berd*, 634 F.2d at 987; *United States v. D'Avanzo*, 443 F.2d 1224, 1225-26 (2d Cir.), *cert. denied*, 404 U.S. 850, 92 S.Ct. 86, 30 L.Ed.2d 89 (1971). The existence of police pursuit or investigation at the time of abandonment does not of itself render the abandonment involuntary. *United States v. Colbert*, 474 F.2d 174, 176 (5th Cir.1973); *see generally, e.g., Berd*, 634 F.2d at 987; *United States v. Canady*, 615 F.2d 694 (5th Cir.), *cert. denied*, 449 U.S. 862, 101 S.Ct. 165, 66 L.Ed.2d 78 (1980); *United States v. Williams*, 569 F.2d 823 (5th Cir.1978); *D'Avanzo*, 443 F.2d 1224.
> The test for abandonment is whether an individual has retained any reasonable expectation of privacy in the object. *Diggs*, 649 F.2d at 735. This determination is to be made by objective standards. *United States v. Kendall*, 655 F.2d 199, 201 (9th Cir.1981), *cert. denied*, 455 U.S. 941, 102 S.Ct. 1434, 71 L.Ed.2d 652 (1982). An expectation of privacy is a question of intent, which "may be inferred from words spoken, acts done, and other objective facts." *Kendall*, 655 F.2d at 202 (quoting *Williams*, 569 F.2d at 826). "A finding of abandonment is reviewed under the clearly erroneous standard." *Diggs*, 649 F.2d at 735.

*U.S. v. Jones*, 707 F.2d 1169 (10th Cir. 1983) (setting forth the legal standard for abandonment). However, "[a]bandonment must be voluntary." *U.S. v. Nicholson*, 114 F.3d 632, 640 (10th Cir.

3

1998). If an abandonment of property is a direct consequence of a Fourth Amendment violation, "such abandonment [is] involuntary as a matter of law." *Id.*

Analysis

Defendant's first argument is that "the officer asked a series of questions that were designed to induce [Defendant] into providing answers that would suggest abandonment to one who had not previously made such a close surveillance of [Defendant]." Doc. No. 25 at 5. According to Defendant, neither Officer Salazar nor any reasonable law enforcement officer "would believe that the backpack was not [Defendant's]." Defendant contends that he denied ownership of the backpack out of fear that he would invite a criminal prosecution should he have claimed it as his own. The Government responds that the encounter between Defendant and Officer Salazar was at all times consensual in nature and therefore never offended the Fourth Amendment.

Defendant's arguments invite the Court to examine the subjective intentions of both Defendant and Officer Salazar. However the doctrines of both abandonment and consensual encounters are examined under an objective lens. *Florida v. Bostick*, 501 U.S. 429, 434 (1991) (holding that an encounter is consensual "[s]o long as a reasonable person would feel free to disregard the police and go about his business"). Defendant's argument that he involuntarily abandoned his backpack during his conversation with Officer Salazar out of fear that claiming the backpack would invite criminal prosecution is unavailing since it is contrary to the law of consensual encounters. The consensual encounter inquiry "presupposes an *innocent* person." *Bostick*, 501 U.S. at 438 (emphasis in original); *Michigan v. Chesternut*, 486 U.S. 567, 574

4

(1988) ("This reasonable person standard . . . ensures that the scope of the Fourth Amendment protection does not vary with the state of mind of the particular individual being approached.").

Notwithstanding the state of mind of Defendant, if he does not take "normal precautions to maintain his privacy" like maintaining possession of his backpack, it should be deemed abandoned. *U.S. v. Austin,* 66 F.3d 1115, 1119 (10th Cir. 1995) (holding that a person who entrusted his luggage to a stranger in an airport with the intent to retrieve it had abandoned his bag even though that person maintained a subjective privacy interest in the luggage). A reasonable person who wants the contents of his or her backpack to remain undisclosed would manifest such a desire when someone tries to take it, even it that person is a law enforcement officer. *Smith v. Ohio*, 494 U.S. 541, 543-44 (1990) (per curiam) (holding that "a citizen who attempts to protect his private property from inspection, after throwing it on a car to respond to a police officer's inquiry, clearly has not abandoned that property"). Hence, Defendant forfeited any objective expectation of privacy in the backpack when he denied any ownership interest in it.

Defendant's reliance on *Walter v. United States*, 447 U.S. 649, 658 n.11 (1980), for the proposition that the court should not "equate an unwillingness to invited a criminal prosecution with a voluntary abandonment" does not aid his cause. *Walter* is distinguishable on many fronts. First, the defendant in *Walter* attempted to locate his cartons of obscene motion pictures before the FBI agents watched the films, and the FBI agents handling the case were aware of that fact. *Id.* Second, the FBI agents never approached the defendant to inquire about his ownership interest in the cartons of films. 447 U.S. 652. Defendant's quoted phrase from *Walter* should be understood as holding that a defendant has no affirmative obligation to ask about property in the

5

possession of police officers when the police officers know that the defendant may have an ownership interest in the property but decline to inquire about it. *Walter* does not stand for the proposition that a defendant can deny ownership if directly asked by a police officer and avoid the consequences of abandonment. When Officer Salazar questioned Defendant about his backpack, Defendant had an obligation to claim ownership if he wanted to retain an objectively reasonable expectation of privacy in his backpack.

Defendant relies on *State v. Casey*, 296 S.E. 2d 473 (N.C. Ct. App. 1982), and *People v. Cameron*, 342 N.Y.S. 2d 773 (N.Y. Sup. Ct. 1973), for the argument that the mere denial of ownership does not amount to abandonment. However, both of those cases presented situations where the defendant retained some possessory interest in the item at issue. In *Casey* the court noted that the defendant "was in actual physical possession of the yellow plastic bag for the entire duration of the encounter with [the police officers]. The officers testified that [the defendant] never set the bags down or made any effort to let go of them until requested to do so by the officers themselves." 296 S.E. 2d at 482. In *Cameron* the bag was inside a car which the defendants lawfully possessed, but did not own. The court observed "There is a great deal of difference between denial of ownership of property on a public street where no possession is claimed or indicated and denial of ownership of property in a car where possession is conceded, although ownership denied." 342 N.Y.S. 2d at 782. Here Defendant physically turned his back towards the backpack when Officer Salazar asked him about it, an action that is entirely inconsistent with a desire to maintain a possessory interest in it. Since Defendant, who was in a public space, did not keep physical possession of the backpack or even the chair on which it lay,

6

his verbal disclaimer of ownership terminated any reasonable expectation of privacy he had in its contents.

Defendant argues the issue that "police conduct short of an illegal seizure or search should also be deemed to nullify the abandonment for Fourth Amendment purposes." 1 Wayne R. LaFave, Search and Seizure § 2.6(b) at 586 (3d ed. 1996). Nonetheless, the Court concludes, as does Professor LaFave, that the issue is foreclosed by *California v. Hodari D.*, 499 U.S. 621 (1991) (holding that a "show of force" may precipitate a voluntary abandonment).

Ordinarily a court does not delve into the subjective intention of a police officer. *U.S. v. Knights,* 534 U.S. 112, 122 (2001) (reemphasizing that the Supreme Court has "been unwilling to entertain Fourth Amendment challenges based on the actual motivations of individual officers," *citing Whren v. United States*, 517 U.S. 806, 813 (1996)). Whether Defendant abandoned his backpack does not turn on what Officer Salazar knew at the time he questioned Defendant. Binding precedent in the Tenth Circuit demonstrates that police officers routinely ask a defendant about their ownership interests in property *after* the police officer has observed the defendant with possession of the property. *E.g. U.S. v. Jones*, 707 F.2d 1169, 1170 (10th Cir. 1983); *U.S. v. Jones*, 914 F. Supp. 421, 423-24 (D. Colo. 1996). Defendant was free to abandon his backpack at any point during the consensual encounter with Officer Salazar and the governing standard makes that point clear: "The existence of police pursuit or investigation at the time of abandonment does not itself render the abandonment involuntary." *U.S. v. Trimble*, 986 F.2d 394, 399 (10th Cir. 1993) (holding that a fleeing defendant abandoned his bag when the police witnessed him discard it).

Because the encounter between Officer Salazar and Defendant remained at all times consensual, Defendant cannot articulate a Fourth Amendment violation that preceded Defendant's abandonment of his backpack which would make that abandonment involuntary. Thus, Defendant must demonstrate an objective privacy interest in the backpack in order to avoid the consequences of the abandonment doctrine. The best evidence of Defendant's objective expectation of privacy is Defendant's answers to Officer's Salazar's questions and his foiled attempt to flee the bus station once Officer Salazar seized and searched the backpack. *U.S. v Chandler*, 197 F.3d 1198, 1200 (8th Cir. 1999) ("In determining whether property has been abandoned for Fourth Amendment purposes, the court must look to the totality of the circumstance, noting in particular two factors: whether the suspect denied ownership of the property and whether he physically relinquished the property."). Neither Defendant's denial that he owned the backpack nor his attempted flight exhibited "normal precautions to maintain his privacy" in the backpack. *Austin,* 66 F.3d at 1119. As Judge Babcock observed in *Jones*, "society does not recognize an expectation of privacy in a piece of luggage purposely left behind in order to avoid the legal consequences" of its contents. 914 F. Supp. at 425. The Court finds that Defendant has no Fourth Amendment rights to assert since he voluntarily abandoned his backpack.

Defendant argues, without citation to authority, that he had a constitutional right to be informed that his abandonment of the backpack would result in an instantaneous search of its contents. Doc. No. 25 at 13. A person engaged in a consensual encounter with a police officer has no right to be informed that he or she does not have to answer the officer's questions. *U.S. v. Little*, 18 F.3d 1499, 1505 (10th Cir. 1994) (en banc). If a person does not have the right to be

8

informed of the consequences that any answer may bring. *Jones*, 914 F. Supp. at 426 ("There is no requirement that a defendant be advised of his rights during a consensual encounter."). Defendant's argument that Officer Salazar should have informed him that the backpack would be searched if he failed to claim ownership is without merit.

For all of the foregoing reasons, the Defendant's Motion to Suppress (Doc. No. 14) is DENIED.

_____
WARREN W. EGINTON
SENIOR U.S. DISTRICT JUDGE
Sitting by Designation